IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BILL HARBERT CONSTRUCTION,

    PLAINTIFF,

vs.                                CASE NO. CV-02-J-2573-S

LANDMARK TOWER CORPORATION,
et al.,

    DEFENDANTS.

## MEMORANDUM OPINION

    Pending before the court are defendants' motion to dismiss, or in the alternative, motion to transfer venue to the Northern District of Florida, Pensacola Division ("motion to dismiss or transfer") (doc. 6), the plaintiff's opposition to that motion (doc. 17) and the plaintiff's motion to strike (doc. 16). The court having considered the motions and the plaintiff's opposition, the court finds as follows:

    The plaintiff filed a motion to strike the Affidavit of James L. Thompson (doc. 16), submitted to the court as Exhibit B to the defendants' motion to dismiss or transfer venue (doc. 6). In said affidavit, Thompson asserts that attached thereto as Exhibit "A" is a list of potential witnesses. The majority of the list consists of companies and corporations. Thompson makes the broad assertions that "Exhibit 'A' is a list of potential witnesses who have personal knowledge of the facts and matters set forth in the complaint" and "[i]t would be far more convenient for all party and nonparty witnesses if the litigation were (sic) conducted in Florida since the majority of witnesses are in Florida." The court finding such assertions not to be factual nor possibly within the personal knowledge of the affiant, the



court is of the opinion that the plaintiff's motion to strike is due to be granted, and shall be granted by separate order.

Defendants argue both that venue is inappropriate in this District, and that based on forum non conveniens, codified at 28 U.S.C. § 1404(a), this case should be transferred to the Northern District of Florida. Defendant's motion, at 1. The defendants do not contest that this court has diversity jurisdiction.

Under 28 U.S.C. § 1391(a), venue is proper "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

This case arises out of a contract plaintiff entered with United States Air Force for construction of a tower with a flight motion simulator to assist in the design of missile systems. *See* plaintiff's opposition at 3 and n.2. The construction site was at Eglin Air Force Base, in Pensacola, Florida. Affidavit of John Bradford, ¶ 2; Affidavit of Paul Alongi, Sr., ¶ 4. Plaintiff then entered a subcontract with defendant Landmark for Landmark to design, fabricate and erect the tower. Plaintiff's opposition at 3. The subcontract was negotiated and entered in Birmingham, Alabama. Affidavit of Bradford, ¶¶ 3, 6. The subcontract specifies that the laws of Alabama shall govern. Plaintiff's exhibit 2, ¶ 31(e). Plaintiff alleges the CEO of Landmark, Henry J. McGinnis, made five trips to Birmingham, Alabama to negotiate this subcontract. Plaintiff's opposition at 2. James L. Thompson, CFO of Landmark, made

at least one trip to Birmingham, Alabama. Id. at 3; Affidavit of Bradford, ¶ 4. Defendant AXA Global Risks US Insurance Company ("AXA") issued a Subcontractor Perfomance Bond, which Landmark provided to plaintiff.[1]  Plaintiff's opposition at 3; Affidavit of Lee Moffett, ¶ 2. When Landmark could not complete its work due to running out of funds, McGinnis and Thompson returned to Birmingham, Alabama, to meet with plaintiff to request an advance on funds due under the subcontract. Plaintiff's opposition at 3-4; affidavit of Moffett, ¶ 2. AXA did not object to this advance. Plaintiff's opposition at 4. Monthly meetings between McGinnis and plaintiff occurred thereafter in Birmingham, Alabama. Affidavit of Moffett, ¶ 3.

The plaintiff alleges that, due to Landmark's continued inability to fund its work under the subcontract, and due to Landmark's inability to produce sufficient collateral for a proposed loan from plaintiff, the parties, including Paul Alongi, Sr., of defendant AXA, met in Birmingham again. Plaintiff's opposition at 4; affidavit of Moffett, ¶¶ 4-5; affidavit of Alongi, Sr., ¶¶ 7-11. Plaintiff alleges that, at that meeting, AXA and Alongi proposed providing plaintiff with a Letter of Credit and a corporate guarantee for repayment for funds plaintiff had advanced or would advance to Landmark to complete the work.[2]  Plaintiff's

---

[1] In support of its motion, defendants submitted an affidavit by Paul Alongi, Sr., which states that the performance bond was written in Dallas, Texas. Affidavit of Alongi, Sr., at ¶ 4.

[2] Defendant Alongi & Associates is alleged to be an agent, broker or claims handler for defendant AXA. Amended Complaint at ¶ 4. The court finds from the amended complaint that the reference to "Alongi" in the plaintiff's opposition is to the defendant Alongi & Associates. See Amended Complaint at ¶ 13-14; plaintiff's opposition at 5. The plaintiff seems to allege that Paul Alongi, Sr., represented both AXA and Alongi & Associates, although this is not explicitly stated. Defendants assert that Paul Alongi, Sr., is a claims manager for AXA and that Paul A. Alongi is the sole member of Alongi & Associates, a New Jersey law firm that represents AXA. Defendants' memorandum, n. 1; affidavit of Alongi, Sr., ¶ 12; affidavit of Paul A. Alongi, ¶¶ 1-2, 7.

opposition at 5; affidavit of Moffett, ¶ 6; affidavit of Alongi, Sr., ¶¶ 9-10. Because the Letter of Credit never materialized, the plaintiff ceased funding work under the subcontract and terminated the same. Plaintiff's opposition at 5, 6. Plaintiff asserts that AXA then agreed to fund Landmark directly and plaintiff allowed Landmark to resume the work. *Id.* at 5; affidavit of Moffett, ¶ 8. Plaintiff continued to fund the work under the subcontract. Plaintiff's opposition at 5. At some point, the plaintiff took over the entire project and is remediating work improperly performed by Landmark. *Id.* at 6-7; affidavit of Moffett, ¶ 11.

The defendants do not contest any of these alleged facts. Rather, they assert that the defendants have insufficient contacts with Birmingham, Alabama, and that key witnesses all reside in Florida. Defendants' memorandum at 2-4.

The court is unpersuaded by the defendants' *forum non conveniens* argument. Under 28 U.S.C. § 1404 (a), the court may transfer a civil action to any other district where it could have been brought for "the convenience of the parties and witnesses...." While none of the defendants reside in the Northern District of Alabama, none of them reside in the Northern District of Florida either.[3] The defendants argue that Landmark crew members and managers for the project reside in Florida. They also allege that the Air Force personnel, including the contract officer and project inspector, reside in Florida and will be key witnesses. Defendants' memorandum at 4.

---

[3] Defendant Landmark is alleged to be a Texas corporation. Amended Complaint, ¶ 2. Defendant AXA is organized under the laws of New York, has its principal place of business in New York, and maintains a registered agent in Alabama. Id., ¶ 3. Defendant Alongi & Associates is a New Jersey corporation. Id., ¶ 4. The Estate of McGinnis was a opened in Texas. Id., ¶ 5.

The court finds that the plaintiff has stated causes of action for breach of contract (Count I), breach of the Performance Bond (Count II), willful misrepresentation (Count III), negligent misrepresentation (Count IV), fraud and deceit (Count V), and breach of contract – personal guarantee (Count VI). With the possible exception of Count I, none of these claims will require testimony from site personnel or the United States Air Force. Rather, the plaintiff sues for alleged failures of the named defendants to perform promises and obligations they entered. *See e.g.*, affidavit of Moffett, ¶¶ 8-10. Most of these actions occurred in Birmingham, Alabama. The performance bond was actually written in Dallas Texas. The tower structure was allegedly fabricated in Texas. Plaintiff's opposition at 12. Even if testimony from various suppliers and subcontractors is needed, many of them appear to be residents of Alabama.[4] *See* subcontractor directory, submitted as attachment to affidavit of Moffett.

Plaintiff asserts that, under 28 U.S.C. § 1391(a)(2), a substantial part of the events or omissions giving rise to the claim occurred in Birmingham, Alabama. This court finds, from a review of the complaint, that the events and omissions giving rise to their claims are only peripherally related to the actual construction of the Tower.[5] Rather, they arise from a

---

[4]Subcontractors from the following states (and the number of subcontractors from that state) were employed on this project: Alabama (11); California (1); Pennsylvania (1); Florida (7); Texas (1); Mississippi (1); Louisiana (1).

[5]For example, defendants assert that the construction site can only be viewed in the Northern District of Florida. Defendants' memorandum at 7. This court agrees. However, viewing the construction site is in no way necessary to determine whether the Performance Bond was breached, whether the plaintiff's assertions about the Letter of Credit are true, whether defendants made fraudulent statements to plaintiff concerning funding, or even if defendant Landmark completed or did not complete the subcontract. This is especially true since Landmark is no longer involved in the construction, which plaintiff asserts is essentially completed. Plaintiff's opposition at 12.

subcontract negotiated and entered into on Birmingham, Alabama, assurances from a meeting in Birmingham, Alabama, and a Performance Bond arguably written in Dallas, Texas. Based on the allegations of the amended complaint, the claims against all defendants, and especially those against AXA and Alongi & Associates, have only a remote connection to the Northern District of Florida. Any harm from the alleged fraud and deceit occurred in Birmingham, Alabama, and are thus governed by Alabama law, weighing strongly in favor of this being the proper venue. *See Twin City Fire Ins. Co. v. Colonoal Life & Accident Ins. Co.*, 124 F.Supp.2d 1243,1248 (M.D.Ala.2000).

The court finds the contentions of the complaint, when viewed in the light most favorable to the plaintiff, persuade this court that the defendants' motion to dismiss or transfer should be denied. See *Jones v. Tread Rubber Corp.,* 199 F.Supp.2d 539, 544-545 (S.D.Miss.2002). In consideration of the foregoing, this court is of the opinion that the defendants' motion is due to be denied and shall do so by separate Order.

**DONE** and **ORDERED** this the ___13___ day of January, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE